Thank you, Your Honor. Anton Matlitsky for A4A. I'm going to try to reserve four minutes if I could, and may it please the Court. This case is not about whether airlines should provide sick leave. They already do, and their policies are more generous than what the paid sick leave statute requires. Instead, at the heart of this case are two different provisions that were negotiated nationwide in CBAs that ensure that employees do not abuse their sick leave in a manner that leaves airlines without enough crew to fly a plane consistent with federal regulations. One of those is medical verification, which simply allows air carriers to ask to verify sick leave when they suspect abuse and thus deters such abuse for obvious reasons. The other one is no-fault reliability policies. Contrary to the state's unsupported assertion, these are not draconian policies that punish employees for taking normal amounts of sick leave. They're instead designed to discourage systemic sick leave, and most obviously, very short notice or no notice sick leave is the kind of leave that causes airline delays and cancellation. The PSL purports to prevent airlines from enforcing those negotiated policies, but those PSL provisions are both preempted by the ADA and unconstitutional under the Dormant Commerce Clause because the evidence shows that they will result in flight delays and cancellations, and thus will substantially affect airline routes and services and will impose substantial burdens on interstate commerce. And those harms are exacerbated by the patchwork of laws that airlines would have to comply with if the PSL were upheld. Now, the district court reached a contrary result, both because it committed several important legal errors and because it simply disbelieved our evidence, contrary to the summary judgment standard. As to the legal errors first, start with the ADA ruling. The court applied a presumption against preemption despite Supreme Court precedent holding that the presumption doesn't apply to express preemption provisions and this court's holding in Korean Air that the presumption doesn't apply to airline regulation. It held that neutral rules of general applicability aren't preempted contrary to Supreme Court cases like Morales, Boland, Ginsburg in this court's case in Korean Air. It held that preemption only applies when the state law binds a carrier to a particular route, price, or service, which is inconsistent with Supreme Court precedent, and it held that DILT's controls here, but that's not so for the two reasons that the government gave in Zemeckis brief and DILT's, to which the court, this court gave Skidmore deference and even more recently Zemeckis brief to Bernstein, which is currently pending before the court. Sorry. Wait, can I just ask you about DILT's? I'm not sure I understand how you're getting around DILT's because DILT's says that generally applicable background rules such as prevailing wage laws and safety regulations are not preempted, and it seems like this would fall into that category. So I don't think DILT's holds that as a general rule. I don't think it can possibly hold that as a general rule because, for example, the Supreme Court's decision in Ginsburg against Northwest was just the general contract rule, the guarantee of good faith and fair dealing. In Boland's, the rule was just the general Illinois consumer fraud statute. Morales was just the general, you know, the unfair business practices law. This court's case in Korean Air, Judge Gould's opinion in Korean Air was about general state unfair competition law. So that's, it might be true that in some circumstances general rules aren't preempted only because their application. Well, there are federal rules about prevailing wage laws and safety regulations, and this would seem to be related to wages and safety kind of law. So not, I think, not like the ones you were just listing. So I don't think that there's any rule, there's certainly no rule under the Dormant Commerce Clause preventing, Dormant Commerce Clause challenge to safety rules, the train cases and the trucking cases. So I was trying to start with preemption because I thought you were going to say preemption. Right, and on preemption there's no exception for health and safety rules either. The government explains why in the Dilt's brief and in Bernstein again. And again, this court gave the government Skidmore deference, so I think the government's position should be taken seriously. And what the government said in that case was that, that case was about meal and rest breaks. And what the government said in that case is that the difference between Dilt's and a case like this one is, first of all, Dilt's was about intrastate trucking routes. And so there wasn't any, there wasn't any risk of a patchwork of regulations or anything like that, because obviously the trucks always stayed in California. And obviously there is not only a risk, but a reality of a patchwork of regulations in this case. And the second point was that the government made was that the result in the analysis would be very different if it were applied to airlines. Because unlike trucking routes, sorry, I didn't mean to. Well, I'd like to point to any case in our court where our court has found preempted a general employment wage safety type law in the employment or labor context. So I'm not, I'm not sure that there's a case from, from this court. Judge Breyer has a case called, called Angeles against US Air. That's a labor law. There is a case from the, from the first circuit called mass delivery against Coakley. There's a recent case of wage and hour law called Brindle against Rhode Island from the Rhode Island Supreme Court. I'm not sure that this court has had occasion to, to consider a case where a background wage and hour law also had the kind of a substantial effect on routes or services that this court, that would be true in this case because. So I thought the standard for preemption was, does this law relate to prices, rates or services? Right. Effect on sounds more dormant commercy to me, but I'm not sure you even get past the threshold that this law relates to prices, rates or services. Right. So, so the Supreme Court has rejected that argument repeatedly, including in Morales, which was the first case. Uh, it doesn't say that Dils is our case. So don't we have to follow it? Well, I think you have to follow the Supreme Court for sure. And the Supreme Court makes significant. Sorry. Do you have a case after Dils from the Supreme Court that you're relying on after Dils? I'm not sure, but I have a bunch of cases from the Supreme Court, including Morales and Rowe that make clear that the, that the, that the standard is a significant impact on, uh, prices, routes, or services, unless the impact, what, what is not significant is an impact that, uh, counts as that is tenuous, remote or peripheral peripheral. It can't be that, um, only laws that specifically, uh, talk about airline prices, routes, or services are preempted, but Morales made clear because the laws in that case had nothing to do with airlines in particular. They were just being enforced against airlines that when the law is being enforced against airlines in a way that has a substantial impact on prices, routes, or services, it's preempted. And that's true here for the reasons that the government explained in Dils that unlike with trucking routes where a half an hour delay doesn't substantially impact the route, airline routes, first of all, are, are tightly choreographed with the FAA, with airports and the like. And so an airline just can't, uh, you know, change its schedule by half an hour, uh, when somebody doesn't show up for, for the flight, when a crew member doesn't show up for the flight and thus the flight can't take off, which was, which is the necessary result of, uh, the PSL's application here. And the second point that the government made in Dils and again in Bernstein is that a delay in Seattle isn't just a delay in Seattle. It's a delay down, uh, down the line cascading through the airline's entire network. And so, and so the impact, sorry. I guess I'm just not, it seems like you like read Dils in a very different way than I did. I mean, Dils says we must draw a line between laws that are significantly related to rates, routes, and services, even indirectly, and thus are preempted. And those that have only a tenuous remote or peripheral connection to rates, routes, and services, and thus are not preempted. And I don't see really where they're putting, where it goes on your side of the line beyond that in Dils. Well, I, I agree with exactly what you just read. I mean, it says significant effect, even if indirect, right? And so, and so the question is, is there a significant effect, even if indirect in this case, or is the, is, or is the effect, uh, you know, tenuous or peripheral in it? And it seems to me that both as a, as an evidentiary matter and as a logical matter, the, uh, the, the line from the PSL to delays and cancellations in flights is direct because the whole point, um, as I understand it is the state's argument is more people will, uh, will take stick leave and thus not show up to flights. Right. Uh, and certainly that can't exclude the kind of disruptive sick leave that, that we're worried about, which is, you know, no shows or, or, uh, folks that don't give, um, sufficient notice. And so they don't show up. That means the flight can't take off. That's a direct impact just as a logical matter. Now, if you think the proper inquiry is whether the provision directly or indirectly binds the carrier to a particular price route or service, I don't price route or service. Right. So that line is in Diltz, but in, in, in other parts of Diltz, I think it's clear that Diltz isn't saying that that is the only kind of law that can be preempted. And, and, and that just can't be true because there's, because the Supreme court precedent, uh, like Morales, like Wolins, uh, like Ginsburg doesn't, doesn't bind airlines to any kind of particular price or router service. The question is, and the statute just as related to the right, which the Supreme court has construed as a substantial impact, meaning not a tenuous, remote or peripheral. And so, so I, I may interject a quick question. Did you have any evidence here that was submitted that, that showed that flight attendants taking paid sick leave had in fact affected when particular flights would take off from SeaTac or had some other effect on your service on, on the airline service prices or rates? What was that? Yes. It wasn't about SeaTac because this law hasn't been enforced against airlines yet, but there, there was evidence about, um, Virgin America's experience at JFK. Uh, there was evidence about American airlines experience at LAX and at Boston. There was evidence about Southwest experience. Uh, all of a sudden, a lot of flight attendants, uh, took sick leave all at the same time, uh, during spring break in 2017. And the way they were able to mitigate, uh, that harm was through medical verification, which of course this law would regression analysis. For example, he took, uh, the top 25, um, days where the highest days of sick leave and showed after running a regression that, uh, there was a statistically significant increase on those days of, um, of delays and cancellations. Now the district court decided, you know, not to, not to believe that evidence. I mean, he, uh, he said things like, for example, he thought that the, that, uh, Virgin America, Virgin America's experience at, at, uh, at JFK was more because it was not a profitable, uh, base than it was because of, uh, its attempt to comply with New York sick leave law. But of course, if that kind of, if you think that kind of evidence is necessary, then you can't, the judge can't resolve that on summary judgment. Uh, we think as, just as a logical matter, when the law results in people, not, uh, people that, you know, flight crew who needs to be there for a flight to take off, not showing up, um, uh, that's going to result in delays and cancellations. And I don't want to forget to mention that not, not only delays and cancellations, but the operational harms having to, uh, comply with a different, uh, excuse me, with, uh, um, with, with the patchwork of regulations that's developing around the country. I see my, my time is running down. A couple of things about, is this, is the enforcement state right now? Can you explain what's going on procedurally with the enforcement right now? As I understand it, it just has not been enforced yet. Um, my understanding is that Alaska is complying as the ground crew, but not as to like, and is that just informally or what's, I thought the law was in effect. Is that not true? The law is in effect. My understanding is that it, I'm not sure that whether there's a, a formal agreement or not, but it has not been, uh, enforced. Is it only Alaska that would be affected by this among your members? So that's what, that's what LNI says. Um, you know, I'm not sure because as the court knows that there's a, there's a very difficult to apply 10 part test. Uh, you know, we argued about that in the, in the sort of patchwork argument. I want to emphasize that it doesn't, our patchwork argument doesn't really turn on that point because the problem is not complying with Washington's and what's complying with Washington's law at the same time as having to comply with other laws. But, um, but, but that, that's, that's LNI's representation. I don't think the courts are bound by it. But you said Alaska is not complying. I mean, it seems like the party's understanding is that Alaska is the airline that's an issue here. That's, that's LNI's position. So yeah, again, if somebody sues, I'm not sure if a Washington court is going to agree with them. It's, it's a position that LNI is taking. And if I, if I could reserve however much time the, the court will grant me on, on rebuttal. Yes. Mr. Motzke, I'm going to give you, let's say an extra two and a half minutes. So Stacy set the clock for three minutes for rebuttal and that will let Mr. Motzke plan ahead. And then we'll move to the appellee's arguments. And I want to mention we have Ms. Sandstrom for the Department of Labor and Industries. We also have Mr. Darin, is that Dalmat? Am I pronouncing that correctly? Yes, Your Honor. Dalmat. Thank you. Mr. Dalmat who is representing the Association of Flight Attendants and Communicational Workers. So the court is very interested in hearing both the perspectives of the state agency and the perspectives of the representative of the union representing the flight attendants and workers. So we'll proceed with that. I think, can we agree Ms. Dalmat or Ms. Sandstrom would go first? Yes, Your Honor. May it please the court, I'm Anastasia Sandstrom, Assistant Attorney General representing the Department of Labor and Industries. Washington voters decided that paid sick leave contributes to the public health protections to family stability and economic security by preventing the costly spread of disease and the loss of wages by workers. This court should affirm the district court's decision for three reasons. First, there are manifest benefits to staying home when sick. Second, there is no substantial burden on interstate commerce and any burden is overcome by the manifest benefits. And third, Washington's paid sick leave law does not bind a carrier to a particular rate route or service. I'd like to address the question about whether the Washington law is in effect. It is. Alaska Airline has chosen to flout the law, but we have not engaged in an enforcement action because we haven't received any complaints. So typically the department investigates upon complaint and we haven't received a complaint. I will just briefly touch on the Airline Deregulation Act because I think it is decided by the DILTS case, which did in fact hold that a carrier would have to bind, or the law would have to bind a carrier to a price route or service. And that was one of the holdings of the decision. It didn't provide an alternative means for a carrier to argue that there was a violation of the Airline Deregulation Act or the Companion Act. But the whole purpose of the Airline Deregulation Act is to allow for competition and that's the reason for the binding. If you take away the ability of a carrier to have voluntary action, they will be able to compete. But this law does not take away any voluntary action. It allows them to set prices as they want. They can do the routes as they want. They can provide the services that they want. There's just simply no binding and there is no material difference to the numerous cases in this circuit that have upheld similar employment type laws. Prevailing wage laws, meal and rest break, independent contractor, workers' compensation, minimum wage, all were found to be several steps removed from prices, routes, or service. And the ability to be able to set your own routes and maybe have to make adjustments does not constitute a violation under DILT where the same arguments were made about routes and costs that were rejected in that case. So they're making the same arguments as in DILT and they simply haven't shown a violation under the ADA. Also, I would say the patchwork argument under the ADA, the DILT case also addresses that, in that it said it wasn't interested in the effect of transportation outside the state, the patchwork, unless there was a connection shown to a price, route, or service which there hasn't been shown. So the patchwork argument was rejected by the court. Okay, Ms. Sandstrom, Judge Gould, if I can interject a question for you and also I would like Mr. Malinsky to address this. When they argue again, and that's this, I understood that there were a couple of other cases, one called Ward and one called Bacara, one involving airlines, the other involving trucking, that deal with similar Commerce Clause claims. And I wondered whether our panel, in this case, should be deferring submission until those decisions have issued. Well, I think they're concerned about who is the employer, what law governs, I think is the concern in those cases. And here we know that Washington law governs, and they've never disputed that Washington law governs in their brief of appellee or in their reply brief. They bring it up tangentially in terms of arguing a burden under the Commerce Clause, but I think that Washington has a Washington-based test where if you're an air flight crew that's based in Washington, domiciled is the term, and the airline has industry in Washington, so Alaska has its corporate headquarters, so you need both of those two elements, then you're a Washington-based employer for the purposes of the airline industry. And they have not disputed that as the law, so I think there's no need to wait because it's not an issue in this case. Okay, before you get back into your normal stream of argument, let me just ask Stacey to add two minutes of time for Ms. Sandstrom so that she'll know what she's got, and then we'll add an extra two minutes for Mr. Dahlmatt also for his time, and then we'll let Mr. Belinsky have an extra minute beyond the three I said. Okay, so please go ahead. Thank you, Your Honor. With respect to the Dormant Commerce Clause, there is no violation here because the benefits far outweigh the burdens. There are many benefits to the law. It provides for economic stability by providing sick leave to workers so they don't lose pay, by reducing strain on hospital beds, by preventing shutdown of businesses and the community for A4A has belabored under a misconception of the effect of the law. Their position is that we already give them sick leave, so therefore there's no benefit to the law with respect to the grant of sick leave. There's no support for that in the Dormant Commerce Clause jurisprudence. Under Dormant Commerce Clause case law, you look to the benefit that the law provides. The fact that an employer might have provided some of that benefit in advance doesn't change the public policy, particularly when you're looking at a law like this that was passed statewide in all industries. So it does provide sick leave, and the benefit that they receive from Alaska is just that it's a collective bargaining agreement, which is a private agreement that can be waived. Washington laws prevent that waiver, and that alone provides a benefit, having sick leave when you're sick. Also, there's a benefit because you get it after 90 days, not the 180 days that Alaska has its flight attendance wait. You get it for domestic violence leave. You get it for when the school is shut down by a public health order and a business. So there's all sorts of... In response to their argument that they're not confident that this only applies to Alaska? They provided no evidence in support of another carrier being covered by it in the testimony. There were four airlines. We stipulated that they didn't have business corporation in Washington. They didn't pay Washington's workers' compensation. That they didn't have a business in Washington. And that was all stipulated to you by the airlines, except for Alaska, which had to stipulate that it did business in Washington that had a corporate headquarters. So it's just simply not understanding the context of the case that there could be other airlines that are subject to it within the contents of this case. The only airline that was shown connected to Washington was Alaska, which leads to a very important point in that this applies to Alaska, which is... And anyone that's an employer of Washington-based employees. So intrastate employers. And the Commerce Clause is meant to guard against protectionism. And there is no protectionism here because out-of-state airlines are off the hook. It's the Washington employers that are subject to the law. So the whole purpose of the Dartmouth Commerce Clause is met because there's no protectionism. So why do you have this many-factored test? I'm not sure I understand why there couldn't be a clearer line. I mean, I think the reason, at least the argument is, it's such a multi-factor test we don't really know. So do you need that multi-factor test? Well, Washington, of course, we have the borders with Idaho and Oregon. And there's different factual scenarios that are looked at for those interactions. But it really derives from the conflict of law analysis. Started with the conflict of law with respect to contracts. Look at Section 9 of the Conflicts of Law. The Supreme Court has directed us... Washington State Supreme Court has directed us to look to the Law of Conflicts. And they use multi-factor tests in the Law of Conflicts, which just shows how this is business as usual for corporations. They do business all across the country. And they have to use the law of the state and determine it for workers' comp, for unemployment, for taxes. And they're all subject to determining what law applies. So it's just normal business. With respect to their claim of delay, they simply haven't shown this for one important fact. First of all, their evidence of a one percent delay was not supported by the record. But even if we assume that delay is part of their industry, the airlines themselves have a target of 15 to 20 percent delay. That's their business model. They have a 79 percent average for delay. That's their business model. For them to suddenly say, oh, if we have a little marginal increase in delay, that's something that upsets the interstate commerce, upsets the interstate market, is simply refusing to understand that they themselves have chosen a business model of delay. So there is no significant impact under the ADA. There is no substantial burden under the Dormant Commerce Clause analysis, because it's just part and parcel of what they do, which is to have a model of 15 to 20 percent delay, and a model that also addresses how to cover when flight crew are sick. This is not a new problem for them, and they are able to do that. The airlines testified that they followed several states' laws on, or paid sick leave laws. They're already following them, and their uniform testimony was it didn't affect prices, it didn't affect routes, it didn't affect operations, as to existing laws. So they simply haven't made the burden to show, either under the Dormant Commerce Clause analysis or under the ADA, that these laws have an effect on either the interstate market or the healthy competition that underlines the ADA. With that, I will ask this court to affirm the district court, and I will give the rest of my time to my co-counsel. Thank you very much, Your Honor, and may it please the court. Darren Dalmet on behalf of the Association of Flight Attendants. I'd like to begin by addressing some of the questions that have been raised, and if I have time, address what I think is the simplest way to resolve the Dormant Commerce Clause case. First, with the ADA standard, Judge Friedland asked about that, and counsel for A4A indicated that there's something inconsistent with the binding standard and Supreme Court authority. And I think that A4A of all parties should know otherwise, because it was in its lawsuit against the city of San Francisco almost 20 years ago now, that this binding standard and grounded it specifically on relating to preemption as construed by the Supreme Court in Engelhoff, and this court more recently in sue, looked also to Supreme Court authority there, Roe, to reinforce that it correctly interpreted the relating to preemption to require a binding or compulsory effect, and there it focused on the portion of Roe that noted that the delivery services required by Maine's law that required age verification would have been frozen in place. So it had a binding effect on a very particular service. There's no evidence in this record at all that shows that any airline that complies with Washington's paid sick leave law is bound to provide a particular rate, route, or service. In fact, the testimony from almost every airline representative in this case is that they don't even consider sick leave when they're doing their network planning, when they're making fare planning and revenue. So I think that fully responds to Mr. Malitsky's point. Certainly his client is dissatisfied with the binding standard, but that has been the law of this circuit firmly grounded in Supreme Court law for nearly 20 years. Judge Gould, your question about Ward, and if I understood it correctly, Oman, but the cases involving United and Delta, and if I misunderstood, let me know. I don't think it would be appropriate to defer resolution of this case, which has been pending for many years. First of all, no party has asked for that kind of relief, and I'm not sure what the basis for it would be. But even setting that aside, the questions, while in some sense sound under similar claims, the Dormant Commerce Clause involved very different laws. The wage statement law in the Ward case, not at issue here. This is a paid sick leave law with very different public health benefits, and in a time of a pandemic, I think those benefits are more pronounced than ever before, and delaying flight crews' ability to have sick leave that is not just on paper, not just a contractual right to approve, but then you're penalized when you use it. But to have a right made manifest in reality, as Washington's law guarantees, because you're protected against retaliation for when you use it, very significant. The law has not stayed though. I'm really confused about why, what the status is, like why you think we need to rule for your clients to have this protection? It seems like the district court ruled in your favor, and no one has stayed that. We believe we do currently have this protection, but the airlines have chosen to sue for their reasons, and they've put a cloud on it, so they're the ones who have brought this issue to the courts. I mean, I agree with you that... But usually, unless there's a stay pending appeal, the law is in effect while the appeal happens. It could change later if we roll the other way, but in the meantime, I don't understand how your clients face urgency, because right now, the law is in your favor. That's true, except that Alaska is simply not complying with it. But I agree with your honor that the law is in effect now, and it's been sustained by Judge Layton quite appropriately, so I think it is enforceable. Do you have any idea why there haven't been complaints? The state is saying they're not doing anything about the lack of protection. Does that indicate that no one actually needs these protections, or what do we draw from the idea that no one has complained? I don't think you can draw anything from that, other than the airlines have not made a showing of any burden in any concrete situation. They're seeking to invalidate the law. They're seeking to invalidate it industry-wide, essentially a facial challenge, and it's their burden to show that the law violates the Dormant Commerce Clause, or is otherwise preempted. They've failed to carry that burden. With the minute that I have left, if I may, I think that the easiest way to resolve the Dormant Commerce Clause is by focusing exclusively on the benefits, and the reason for that is because when courts apply PIKE to cases involving interstate transportation, they often begin and properly end with an inquiry into whether the state law operates in practice to undermine its own stated objectives, thereby rendering the benefits illusory. That's how the Supreme Court approached train crew laws in locomotive firemen and smoke abatement ordinances in Huron-Portland cement. It's also how this court approached noise ordinances and fuel regulations in City of Long Beach and Pacific Merchant Shipping Association. The airlines have presented no evidence at all that compliance with the paid sick leave law makes the public sick, destabilizes families, or makes Washington-based employees economically insecure, and because they have not shown that the paid sick leave law is undermining, this court doesn't even need to address the very minimal benefits that they assert, although are not supported on the record. Unless your honors have further questions for me at this time, we join the state in asking for affirmance. Thank you, Mr. Foment. Now, do Judge Friedland or Judge Boo have questions? Dan, I have no questions, so thank you for your argument. We turn to Mr. Olitski. Just starting with your question on Ward, I think we agree with Mr. Donlett that the cases have belated issues, but the laws at issue are different, and so the analysis will probably be I think I listed off a bunch of evidence that we submitted in my opening argument. There wasn't any response to it. Again, we submitted evidence of versions experienced at JFK, of Americans experienced at LAX, Boston, Southwest experienced in 2017. Fact-witness testimony explaining why these laws will result in delays and cancellations and why multiple states' laws are so difficult to comply with at once. On the Dormant Commerce Clause, the purpose of the Dormant Commerce Clause is not just to preclude protectionism. That's the whole point of the Pike test. The idea that you can look at the benefits of the law as a whole and not just the benefits of the law, the parts of the law that cause the harm to it. Pike makes clear that it's incorrect. The law in Pike was a general law about making sure that the Supreme Court said that's all fine and good, but the one provision about packaging cantaloupes imposed a burden on interstate commerce, and that provision did not provide sufficient benefits to outweigh the harms. It's the same thing here. We don't disagree that there's benefits to sick leave law, but this is an as-applied challenge, and the airlines all provide sufficient sick leave. The question is whether there's benefits to the provisions that actually impose a substantial impact of burden on interstate commerce. They are the ones, contrary to Mr. Dalmutt's argument, they have to provide some evidence, the evidence of the local benefit. There is not a single line in the record about why precluding airlines from seeking medical verification would benefit anybody, and while there are a few affidavits in the record that report to talk about the no-fault reliability policies, what they're really talking about is probation periods where people don't get paid for sick leave at all, and in any event, three affidavits from three members of the flight crew are not enough to demonstrate any kind of real benefit of the law that would outweigh the obvious burdens on interstate commerce, which are again include, but are not limited to, the delays and cancellations that will ripple through airlines' national networks, as we've shown and as the district court just decided to disbelieve. The argument of delay is part of the industry. I mean, delay happens, but the argument I think that the state is making here is that we can enact laws that will result in substantial incremental delay beyond what already happens because of weather and the like, and there's no precedent for that. I mean, that argument would suggest that if they could just enact a law that says every hundredth or every thousandth flight needs to be delayed, and of course, you can't do that under either the ADA or I would think the Dormant Commerce Clause. On dilts, I would just urge the court to look at the government's brief and dilts that which the court gave skid more difference. I know you've been making that argument, but what case tells us that the way we should interpret our case law is by looking at the briefs that aren't cited? No, I'm not saying that you should, well, I'm partially saying you should look at the briefs because the court said it was giving skid more difference to the government. But don't we just look at the four corners of dilts? I mean, don't we have to interpret dilts within the four corners of dilts? Absolutely. All I'm saying is that the government's position in dilts is correct. It's not that you should find, file, follow the government because it's binding. But it seems like if we have to go look at a brief for you to get your interpretation of dilts, that seems like a problem. I'm not suggesting that you need to go look at a brief for us to get our interpretation of dilts. What I'm saying is that the government was correct in dilts and it's correct interpreting dilts in Bernstein. By correct, what I mean is dilts was limited to intrastate state trucking and it was not about airlines. The impact of even small changes in schedule on airlines is just of a completely different kind than on trucking routes. And the government explained that, but it's just, I think, clear as a matter of logic. And it's just true that when a flight is delayed, the route is substantially changed and causes a cascading effect throughout the entire national network. Nothing like that happens with trucking networks. And so it's just a different kind of analysis as applied to airlines. Oh, and one other point, if I could, the idea is we agree that the ADA is about making sure that competitive market forces apply and govern operations. But it's just not true that if you let this law go forward, that airlines will be able to run the routes that they want under the market. Again, evidence shows that routes will be substantially delayed and canceled. And again, cascading throughout the entire national network. And that is contrary to what the market would allow. What the market would allow is what bargaining, under their collective bargaining agreements. I see I'm way over time, so I'm just stopping. Thank you. Bob's going to ask you to try to wrap up, but I appreciate your stop. Well, as usual, we've had excellent arguments here from Washington Council and New York Council, and the panel really appreciates that. All of us remember being advocates. We know it's not an easy job, but you're all doing it very well and it helps us a lot. Without further delay then, I think we'll ask Stacey to please note that the Air Transport Association case is submitted and the parties shall hear from the panel in due course. And I think that was our last case for today. And so the court will now adjourn with thanks. Thank you, Your Honor.
judges: Gould, Friedland, Bough